76949. SAVANNAH LAUNDRY & MACHINERY COMPANY,
INC. v. HOME INSURANCE COMPANY.
76950. OWENBY v. HOME INSURANCE COMPANY.
(376 SE2d 373)

BENHAM, Judge.

Appellant Owenby was seriously injured in March 1984 when a boiler door on a steam cooker in the kitchen of his employer blew off. Appellant Savannah Laundry & Machinery Company, Inc. ("Savannah") had made repairs to the boiler two years before Owenby's injury. When Owenby filed suit against Savannah seeking damages for the injuries he had sustained, Savannah requested its insurance carrier, appellee The Home Insurance Company ("Home") to defend and pay any judgment rendered against Savannah. Home sought a declaration of its obligations under the insurance policy, and the trial court granted Home's motion for summary judgment. We have consolidated the separate appeals each appellant filed from that judgment.

For purposes of the present declaratory judgment action it is undisputed that Savannah installed a nut other than the original one on the stud securing the boiler door when it repaired the boiler in 1982. At issue is the "completed operations hazard" exclusion to the general liability provision of the policy issued by Home to Savannah.

The pertinent provisions follow:

" '[C]ompleted operations hazard' includes *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *Named Insured*. 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

"(1) when all operations to be performed by or on behalf of the *Named Insured* under the contract have been completed,

"(2) when all operations to be performed by or on behalf of the *Named Insured* at the site of the operations have been completed, or

"(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

"Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

"The *complete operations hazard* does not include *bodily injury* or *property damage* arising out of

"(a) operations in connection with the transportation of property, unless the *bodily injury* or *property damage* arises out of a condition in or on a vehicle created by the loading or unloading thereof,

"(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

"(c) operations for which the classification stated in the policy or in the company's manual specifies 'including completed operations.'"

1. Appellants argue that the completed operations exclusion is not applicable because the operation was not a completed operation inasmuch as it is alleged that the proper nut was not installed. It is appellee's position that the operation was complete and was, if anything, one in which replacement of the improper nut was necessary, thereby making the operation one deemed completed under the completed operations exclusion. We are in agreement with appellees and, accordingly, affirm the judgment of the trial court.

"'A contract or operation is deemed completed when the work contracted for or undertaken has been finished, even though minor details of performance may remain.' 12 Couch on Insurance 2d (Rev. ed.) § 44A:24." *Hartford Accident &c. Co. v. Strain Poultry Farms,* 166 Ga. App. 334, 336 (303 SE2d 781) (1983). Under the policy, "[o]perations shall be deemed completed at the earliest of the following times: (1) when all operations to be performed by . . . the named Insured under the contract have been completed, (2) when all operations to be performed by . . . the Named Insured at the site of the operations have been completed, or (3) when the portion of the work out of which the injury or damage arises has been put to its intended use. . . ." There is no question that the boiler and inspection plate door had been put to its intended use for a period of nearly two years prior to Owenby's injury. As if that were not enough to support the conclusion that Savannah's operation concerning the boiler was completed, the policy exclusion goes on to say that an operation is deemed completed if it is otherwise complete but "may require further service, maintenance work, or correction, repair or replacement because of any defect or deficiency. . . ." Thus, the policy excludes from coverage a completed operation that was improperly installed.

See *Continental Ins. Co. v. Hawkins*, 170 Ga. App. 274 (316 SE2d 596) (1984).

There is support in the decisions of other jurisdictions for appellants' position that an injury resulting from improperly installed equipment is legally equivalent to an injury resulting from uninstalled equipment. See, e.g., *Chancler v. American Hdw. Mut. Ins. Co.*, 109 Idaho 841 (712 P2d 542, 549) (1985); *U.S.F. & G. v. Nat. Tank & Machine Works*, 402 S2d 925, 928 (Ala. 1981). The courts involved in these cases have concluded that an operation is not complete when not performed properly. Such an interpretation, however, "would virtually render ineffective the exclusionary provision" (58 ALR3d 12, § 2 (a)), and render meaningless the "further operations" clause contained in the completed operations exclusion. The *Chancler* and *U.S.F. & G.* courts have also both concluded that the failure to install the proper equipment (thereby making it uninstalled equipment) resulted in coverage under the general liability policy due to the operation of the "uninstalled equipment" exception to the "completed operations" exclusion. However, Owenby's injuries are not alleged to have been caused by the *presence* of uninstalled equipment, but by its absence. We decline to hold that the "uninstalled equipment" exception covers an allegation of negligent installation.

2. Appellants contend that appellee is estopped from denying coverage. Savannah's president executed an affidavit averring that the insurance company's agent was instructed by Savannah's president to provide liability coverage to cover all injury and damage claims that could potentially arise out of the repair, maintenance, and inspection of boilers, and that the affiant was informed that the policy's coverage included all the potential risks faced by Savannah. The affiant also stated he was not aware of the policy's endorsement for an exclusion for completed operations hazards and that he would not knowingly have agreed to it. In support of appellee's motion for summary judgment, the insurance agent executed an affidavit in which she stated that she had discussed the insurance coverage obtained with Savannah's president; that she and he had discussed in detail that there was no coverage for completed operations hazard; and that he had signed an endorsement which stated that it was "understood and agreed that Completed Operations Hazards and Products Hazard are excluded. . . ."

"That the . . . insured was under a duty to examine [its] policy and ascertain for [itself] what coverage [it] had is well settled. [Cits.] . . . The insured was not only free to examine the contract, [it] was under a duty to do so, and if [it] had done that [it] would have observed just what coverage it provided to [it]. If it was not what [it] wished to have [it] could have renegotiated . . . or . . . returned it as unacceptable and negotiated a contract with another company . . . If

the policy issued (was) essentially different from the one that the [insured] desired, the remedy . . . would have been to reject, when tendered, the policy as written . . . [I]f the applicant neglects to examine the policy delivered to [it] the contract is binding . . . [Cit.]" *Parris & Son v. Campbell,* 128 Ga. App. 165 (13) (196 SE2d 334) (1973). "[T]he doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer . . . , are not available to bring within the coverage of a policy risks expressly excluded by its terms. [Cit.]" *St. Paul Fire &c. Co. v. Cohen-Walker, Inc.,* 171 Ga. App. 542 (2) (320 SE2d 385) (1984).

Based upon the records before us, the trial court did not err in granting summary judgment to appellee.

*Judgments affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 4, 1988 —
REHEARING DISMISSED DECEMBER 1, 1988.

*Jones, Bordeaux & Associates, Noble L. Boykin, Jr.,* for appellant (case no. 76949).

*Bouhan, Williams & Levy, Walter C. Hartridge, Edwin D. Robb, Jr., Roy E. Paul, Peter D. Muller,* for appellant (case no. 76950).

*Brigid F. Dzierzanowski,* for appellee.